RENDERED: MAY 21, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0825-MR

LONESTAR RODEO, LLC;                                                    APPELLANTS
PRESTON C. FOWLKES;
CLINT MADISON; RACHEL BOYD;
BRIAN STEVEN MONTGOMERY;
AND STOCKDALE'S LLC


|           | APPEAL FROM WARREN CIRCUIT COURT          |
|-----------|-------------------------------------------|
| v.        | HONORABLE STEVE ALAN WILSON, JUDGE        |
|           | ACTION NO. 17-CI-00427                    |


UNITED STATES FIRE INSURANCE                                           APPELLEE
COMPANY


### OPINION
### AFFIRMING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND L. THOMPSON, JUDGES.

JONES, JUDGE: The appellants[1] in this case appeal from the Warren Circuit

Court's order granting United States Fire Insurance Company's (USFIC's) motion

for summary judgment. In its order, the circuit court found the underlying event at

---

[1] Upon its motion, Stockdale's LLC was dismissed as a party to this case on January 8, 2021.

issue herein was not covered by USFIC's insurance policy with appellant Lone Star Rodeo, LLC (Lone Star).[2]  We affirm.

**BACKGROUND**

Lone Star is in the business of hosting professional rodeo events, and it organizes and performs approximately twenty-five events per year in about eleven states.  Lone Star is a family business owned by appellant Preston C. Fowlkes, Jr. and his wife, although the two are retired and no longer actively participate in managing the business.  One of the appellants, Clint Madison, is Preston Fowlkes's son-in-law and is responsible for Lone Star's livestock.  Rachel Boyd is the last of the Lone Star appellants.  She is Preston Fowlkes's daughter and manages Lone Star's office, including its contract and insurance paperwork.

Lone Star planned to hold a rodeo in Bowling Green, Kentucky, from February 10 through February 12, 2017.  To promote the rodeo, on February 9, 2017, Lone Star exhibited two bulls in an enclosure at Stockdale's, LLC (Stockdale's), a rural lifestyle retailer.  Unfortunately, the bulls escaped from the enclosure and began running loose in the streets of Bowling Green.  During its brief period of freedom, one of the bulls allegedly struck Brian Steven Montgomery as he was walking home from work.  Montgomery suffered a broken

---

[2] We have referred to this appellant as "Lonestar Rodeo, LLC" in our caption because that is how the name is spelled in the body of the notice of appeal.  However, a review of the record indicates the party's name should be "Lone Star Rodeo, LLC."

femur as a result of the incident. The injury required Montgomery to undergo surgery, and he was forced to use a walker for mobility for about two months afterward. Montgomery subsequently filed a personal injury suit against Lone Star, Fowlkes, Madison, Boyd, and Stockdale's. In his complaint, Montgomery claimed the defendants failed to maintain control of the bull when it struck him, thus causing his injuries.

Prior to the incident of this case, Lone Star purchased a Commercial General Liability Policy from USFIC to insure it against personal injury claims. The policy's Certificate of Coverage designates Lone Star as the named insured member and provides general liability coverage for personal and advertising injury up to one million dollars. (Record (R.) at 722.) However, the policy also contains an endorsement entitled "Limitation of Coverage to Designated Premises or Project," which reads as follows:

> This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> . . .
>
> This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
>
> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.  The project shown in the Schedule.

(R. at 93.)

The ellipsis in the quoted section above is a placeholder for what the endorsement refers to as "the Schedule," a table containing a "Premises" section and a "Project" section. The premises section is entirely blank, but a provision following the Schedule states, "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." The project section contains a series of dates which Boyd had submitted to USFIC to cover Lone Star's scheduled rodeo events. However, the project dates include only February 10, 2017 through February 12, 2017, and not the promotional event at Stockdale's on February 9, 2017. In her deposition, Boyd admitted she intended to include the date for the rodeo's promotional event as well, but she inadvertently left it out. All of the parties agree that the incident of this case occurred on a date not included in the project section.

On May 4, 2017, USFIC sent a letter to Lone Star denying coverage for the incident, asserting the incident did not occur on a date covered by the project section within the endorsement. Lone Star then filed a declaratory action suit against USFIC in an attempt to compel USFIC to defend and indemnify Lone Star in the underlying case. The circuit court ordered the two cases to be consolidated, and USFIC subsequently moved the court for summary judgment.

-4-

The circuit court granted summary judgment to USFIC on October 28, 2019. The circuit court initially expressed that it did not understand why Stockdale's would not be considered covered premises for the purpose of the policy. Stockdale's was able to produce a "Certificate of Liability Insurance" based on Lone Star's policy in order to argue that it ought to be covered, and the circuit court's order mistakenly referred to this document as a "Certificate of Coverage." The circuit court stated it "would question why the issuance of a certificate of Coverage to a nonentity." (R. at 766.) Despite this apparent confusion, the circuit court found that the terms of the policy unambiguously excluded coverage on February 9, 2017, and on those grounds found USFIC had no duty to defend or indemnify the Lone Star appellants or Stockdale's. (R. at 767.) Furthermore, because the circuit court found the policy to be unambiguous, it determined that the appellants' arguments regarding reasonable expectations of an insured did not apply.

Following the circuit court's order, each of the appellants separately moved the circuit court to reconsider its order. The appellants argued the court had correctly determined that Stockdale's should be considered a premises covered by the policy, but the circuit court appeared to believe that the policy's limitation endorsement required both premises and applicable project dates to be in effect for coverage to apply. The appellants pointed to the language of the endorsement,

which states that meeting the definition of the "premises" *or* the "project" section of the Schedule would provide coverage. Arguing that the circuit court's previous decision appeared to believe that Stockdale's met the definition of covered premises, the appellants asked the circuit court to reconsider the previous order and enter judgment requiring USFIC to defend and indemnify the Lone Star appellants.

On April 30, 2020, the circuit court entered an order denying the appellants' motions for reconsideration. The circuit court noted how all the parties involved agreed that the provision in the endorsement limiting liability applied to this case. The circuit court then clarified its earlier order and found that the premises section did not apply "because there [were] no premises listed in the Schedule." (R. at 805.) The circuit court then denied the motions to reconsider, finding that "the only section of the provision to apply is [the project section], which covers only the dates given. The bull escaped from the promotional event at Stockdale's on a date not listed in the event dates on the Schedule." (R. at 805.) This appeal followed.

## ANALYSIS

The appellants present two arguments on appeal. First, the appellants contend the circuit court erroneously found that the premises section of the policy did not apply because there are no premises listed in the endorsement's Schedule. Second, the appellants contend the circuit court erroneously found that USFIC was

not obligated to defend and indemnify the appellants under the reasonable expectations doctrine. Neither argument has merit.

A trial court properly awards summary judgment when "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[3] 56.03.

> The function of summary judgment is to terminate the litigation when it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor. It is proper where the movant shows that the adverse party could not prevail under any circumstances.

*James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 276 (Ky. 1991) (citations omitted).

The central question in this case is whether the circuit court properly granted summary judgment on the grounds that USFIC had no duty to defend or indemnify the appellants. "Generally when any claim has no substance or controlling facts are not in dispute, summary judgment can be proper." *Id*. at 277. "The duty to defend continues to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy and not merely that it

---

[3] Kentucky Rules of Civil Procedure.

-7-

might not be." *Id.* at 279 (citing 7C APPLEMAN, INSURANCE LAW AND PRACTICE § 4683.01 at 69 (Berdal Ed. 1979)). Finally, "[w]e review *de novo* the trial court's grant or denial of a motion for summary judgment." *Community Financial Services Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019) (citation omitted).

For their first argument, the appellants contend the circuit court erred when it determined the premises section of the Schedule did not apply because it was left blank. According to the appellants, even though this incident did not occur on a project date in the endorsement, the circuit court should have read the "or" connector in the language endorsement and found the incident occurred on premises covered by the policy instead. Furthermore, because the premises section of the endorsement is blank, the circuit court should have considered the language in the endorsement stating, "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." (R. at 93.) As the final step in this argument, the appellants assert the Stockdale's location qualifies as premises covered by the policy. Stockdale's had previously obtained a "Certificate of Liability Insurance" as an additional insured on Lone Star's policy with USFIC, and this certificate contains Stockdale's address—the same address from which the bulls escaped.

After examining the record, we agree with the circuit court that the premises section of the endorsement does not apply to the Stockdale's location,

although we arrive at this conclusion based on different reasoning than that utilized by the circuit court.[4]

> When the terms of an insurance contract are unambiguous and reasonable, they will be enforced. *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005). Policy exceptions and exclusions are strictly construed to make insurance effective. *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992). Any ambiguities in an insurance contract must be resolved in favor of the insured, but this rule of strict construction certainly does not mean that every doubt must be resolved against the insurer and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the plain meaning in the contract. *McClendon*, 157 S.W.3d at 630.

*Tower Insurance Company of New York v. Horn*, 472 S.W.3d 172, 173-74 (Ky. 2015).

The circuit court reasoned that it was unnecessary to examine the premises section of the endorsement because the policy dates exclude the date of the incident. We agree with the appellants that the endorsement language clearly states that insurance coverage is intended if the premises *or* project sections apply. We also agree with the appellants that we should use the provision of the endorsement which requires us to refer to the policy declarations to complete the blank premises section. Item 4 of the Supplemental Declarations defines the

---

[4] "[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

"Location of Premises" as "[t]he addresses of the operations of each 'Named Insured Member' on file with us and as described in the Certificate of Coverage issued to the 'Named Insured Member.'" (R. at 243.) As the named insured covered by the policy, Lone Star's "Certificate of Coverage" designates its address in Crofton, Kentucky. (R. at 722.) Stockdale's location is not included on any Certificate of Coverage in the record. Therefore, by the terms of the endorsement, the blank premises section would include Lone Star's address in Crofton, but not Stockdale's address in Bowling Green.

The appellants' argument attempts to conflate Stockdale's Certificate of Liability Insurance with a Certificate of Coverage. However, these two documents are not identical. A certificate of insurance has no effect on coverage in the policy:

> Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A certificate of insurance is not part of the policy—if it states that there is coverage but the policy does not, the policy controls.

*Ann Taylor, Inc. v. Heritage Ins. Services, Inc.*, 259 S.W.3d 494, 498 (Ky. App. 2008) (quoting RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 242:33 (3d ed. 2008)). Stockdale's Certificate of Liability Insurance is clearly a document of the type contemplated in *Ann Taylor*, *supra*. Stockdale's certificate states, in relevant part, that it "is issued as a matter of information only and confers no rights

upon the certificate holder" and it "does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies below." (R. at 388.) The certificate of insurance in *Ann Taylor* used those exact terms as a disclaimer as well. 259 S.W.3d at 497. "When the terms of an insurance contract are unambiguous and reasonable, they will be enforced." *Horn*, 472 S.W.3d at 173 (citation omitted). We may not use the information found in Stockdale's Certificate of Liability Insurance to alter coverage provided by the plain language of the insurance policy.

In their second argument, the appellants contend the circuit court should have required USFIC to defend and indemnify them based on the doctrine of reasonable expectations.

> The rule of interpretation known as the reasonable expectations doctrine resolves an insurance policy ambiguity in favor of the insured's reasonable expectations. . . . The basic thrust of this doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy.

*Kentucky Employers' Mutual Insurance v. Ellington*, 459 S.W.3d 876, 883 (Ky. 2015) (citations and internal quotation marks omitted).

The appellants contend they had "an expectation that the Policy would provide coverage for liability claims arising from its promotional event at Stockdale's on February 9, 2017." (Appellant's Brief at 12.) We disagree. It is undisputed that appellant Boyd, on behalf of Lone Star, failed to submit February

-11-

9, 2017, as one of the project dates which would provide insurance coverage under Lone Star's policy with USFIC. (Appellant's Brief at 4.) The appellants also argue the issuance of Stockdale's Certificate of Liability Insurance necessarily created an expectation that the promotional event was covered. However, as previously discussed, Stockdale's certificate of insurance is not part of the policy itself, and it explicitly states that it creates no rights for the holder. "[T]he mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity[.] Only actual ambiguities, not fanciful ones, will trigger application of the doctrine." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (citations and internal quotation marks omitted). There is no ambiguity in the policy which would require application of the reasonable expectations doctrine.

## CONCLUSION

For the foregoing reasons, we affirm the Warren Circuit Court's order granting summary judgment to USFIC.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

FOR LONE STAR RODEO, LLC;
CLINT MADISON, PRESTON C.
FOWLKES, JR.; AND RACHEL
BOYD:

Timothy L. Mauldin
Bowling Green, Kentucky

FOR BRIAN STEVEN
MONTGOMERY:

Benjamin D. Crocker
Joseph V. McReynolds
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Christopher M. Mussler
Louisville, Kentucky